IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **RYAN S.,**[1] <br><br> Plaintiff, <br><br> v. <br><br> **COMMISSIONER, SOCIAL SECURITY ADMINISTRATION,** <br><br> Defendant. | **Civ. No. 6:19-cv-01450-MC** <br><br> **OPINION AND ORDER** |

**MCSHANE, Judge**:

      Plaintiff Ryan S. was denied Disability Insurance Benefits under Title II of the Social Security Act. He appeals to this Court, arguing that the Administrative Law Judge ("ALJ") erred by improperly rejecting medical opinions, discrediting his subjective symptom testimony, and discounting lay witness statements. Because the Commissioner of Social Security's ("Commissioner") decision follows proper legal standards and is supported by substantial evidence, the Commissioner's decision is AFFIRMED.

## STANDARD OF REVIEW

      The Court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3). A reviewing court will affirm the Commissioner's decision if it is based on proper legal standards and the legal findings are supported by substantial evidence in the record. *Id.*; *Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental party.

1 – OPINION AND ORDER

adequate to support a conclusion.'" *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012) (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)). To determine whether substantial evidence exists, the Court reviews the entire administrative record, weighing both the evidence that supports and detracts from the ALJ's decision. *Davis v. Heckler*, 868 F.2d 323, 326 (9th Cir. 1989).

## DISCUSSION

The Social Security Administration uses a five-step sequential evaluation to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520; 416.920 (2012). The initial burden of proof rests on the claimant to meet the first four steps. If the claimant satisfies his burden with respect the first four steps, the burden shifts to the Commissioner for step five. 20 C.F.R. § 404.1520. At step five, the Commissioner must show that the claimant can adjust to other work after considering the claimant's RFC, age, education, and work experience. *Id.* If the Commissioner fails to meet this burden, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v). If, however, the Commissioner finds that the claimant can perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante v. Massanari*, 262 F.3d 949, 953–54 (9th Cir. 2001).

At step two, the ALJ found that Plaintiff had the following severe impairments: epilepsy; pseudoseizures; headaches/migraines; obstructive sleep apnea; obesity; adjustment disorder; and anxiety disorder. Tr. 113.[2] At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or equaled any of the Listing of Impairments. Tr. 113. The ALJ assigned Plaintiff the following RFC:

> The claimant [can] perform a full range of work at all exertional levels but with the following nonexertional limitations. The claimant can perform tasks that never require climbing ladders, ropes, or scaffolds and that have no exposure to hazards such as

---

[2] "Tr" refers to the Transcript of Social Security Administrative Record provided by the Commissioner.

2 – OPINION AND ORDER

dangerous machinery and unprotected heights. The claimant can understand, remember, and carry out short, simple, routine job tasks consistent with a DOT/GED general reasoning level of 2 or less. The claimant needs a static work environment with few changes in work routines and settings. He can perform tasks with no public contact.

Tr. 114. Based on the vocational expert's testimony, the ALJ concluded Plaintiff could not perform past relevant work but could perform other jobs that exist in significant numbers in the national economy. Tr. 117. The ALJ thus determined that Plaintiff was not disabled. Tr. 117.

## I. Medical Opinions

Plaintiff argues that the ALJ erred in their assessment of the various medical opinions in the record. The ALJ is tasked with resolving conflicts in the medical record. *Carmickle v. Comm'r*, 533 F.3d 1155, 1164 (9th Cir. 2008). "As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant." *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1222 (9th Cir. 2010) (internal quotation marks and citation omitted). An ALJ may reject the uncontradicted medical opinion of a treating or examining physician only for "clear and convincing" reasons supported by substantial evidence in the record. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). An ALJ may reject the contradicted opinion of a treating or examining doctor by providing "specific and legitimate reasons that are supported by substantial evidence." *Id.* Opinions of non-treating or non-examining physicians "may . . . serve as substantial evidence when the opinions are consistent with . . . other evidence in the record." *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002).

### A. Dr. Englander

Plaintiff argues that the ALJ incorrectly "reject[ed] the treating medical source opinion of [Dr. Englander]." Pl.'s Op. Br. 11–12, ECF No. 10. Plaintiff first contends that the ALJ erred by discounting Dr. Englander's opinion that stress triggers Plaintiff's seizures. Pl.'s Op. Br. 8. Second, Plaintiff claims that the ALJ erred in discounting Dr. Englander's opinion based on

purported inconsistencies in Plaintiff's activities. Pl.'s Op. Br. 9. The Commissioner counters that the ALJ did not err in weighing Dr. Englander's opinion. Def.'s Br. 3–6, ECF No. 11.

Dr. Englander, Plaintiff's treating physician, provided an opinion letter in July 2017. Tr. 114. Dr. Englander stated that Plaintiff's seizures "ha[d] never been completely controlled with medication" and that Plaintiff had recently "had an increase in seizures." Tr. 514. Dr. Englander concluded that Plaintiff "is unlikely to come under control of his epilepsy that would allow him to hold down a job." Tr. 514.

The ALJ gave little weight to Dr. Englander's opinion. Tr. 115. The ALJ first noted that Dr. Englander's opinion lacked consistency with Plaintiff's treatment history, which showed that Plaintiff had good control of his seizures during the relevant period. Tr. 115 (citing neurology chart notes from February 2017 suggesting that Plaintiff had "good control" of his seizures with no side effects, complications, or seizure activity). The ALJ acknowledged that Plaintiff experienced breakthrough seizures the same month of Dr. Englander's opinion letter but noted that this seizure activity correlated with increased stress because of the claimant's divorce. Tr. 115. After the breakthrough seizures, Dr. Englander increased Plaintiff's medication. Tr. 115, 613. Plaintiff then denied any seizure activity in August 2017, September 2017, and April 2018. Tr. 115, 613, 606, 604. The ALJ thus characterized the breakthrough seizures as "anomalous and temporary." Tr. 115. The ALJ reasonably found that Dr. Englander's opinion conflicted with Plaintiff's treatment history throughout 2017 and 2018.

The ALJ also noted Plaintiff's reported activity of working on and off with no seizure activity. Tr. 115. Still, the ALJ accounted for Plaintiff's claims by incorporating the limitation in the RFC finding. Tr. 115 (the RFC "limit[s] the complexity of tasks to perform, the [Plaintiff's] interaction with the public, and the work environment"). Thus, even if the Court accepts Plaintiff's

claim that the ALJ erred by discounting Dr. Englander's opinion that stress causes Plaintiff's symptoms, that error is ultimately harmless. *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008).

Finally, the ALJ noted that Plaintiff's increased alcohol consumption in September 2017 may have impacted his reported seizure activity. Tr. 115. Plaintiff contends that this is not a convincing or legitimate reason to discount Dr. Englander's opinion because "there were no reported seizures in August or September." Pl.'s Op. Br. 10. But throughout Plaintiff's treatment history, his healthcare providers repeatedly told him not to drink alcohol while taking his medication. Tr. 394, 424. And yet Plaintiff admitted to alcohol use of varying degrees. *See* tr. 360, 433, 507, 572, 643. It was not unreasonable for the ALJ to consider Plaintiff's alcohol use in assigning Dr. Englander's opinion little weight.

While Plaintiff urges the Court to interpret the record otherwise, the Court is bound to uphold the Commissioner's conclusion if it is a rational interpretation. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Ultimately, the ALJ provided "specific and legitimate reasons . . . supported by substantial evidence" for assigning Dr. Englander's opinion only some weight. *Bayliss*, 427 F.3d at 1216.

### B. Dr. Ferguson

Dr. Ferguson took over Plaintiff's treatment beginning in August 2017. Tr. 613. In December 2017, Dr. Ferguson provided an opinion letter in which she stated that (1) Plaintiff could not sustain work and would miss more than four days of work per month because of monthly seizures, impulsivity, irritability, headaches, and cognitive impairment; and (2) Plaintiff's medication caused side effects such as sedation, impaired memory and concentration, and balance problems. Tr. 525–27.

The ALJ assigned Dr. Ferguson's opinion little weight because of its inconsistencies with Plaintiff's treatment history and overall medical record. Tr. 115. The ALJ first noted that rather than showing monthly seizure activity, Plaintiff's treatment records instead show that Plaintiff was mostly seizure-free during the relevant time. Tr. 115, 622 (only seizure activity reported by Plaintiff in 2017–2018 were breakthrough seizures around July 2017). The ALJ later noted that the record showed only minimal depression and "no evidence of any significant mental health treatment"; that Plaintiff denied headaches in January 2018 and reported that his headaches were "manageable" in April 2018; and that Plaintiff denied side effects from his medications throughout the relevant period. Tr. 115, 136, 574, 581, 604, 607, 633. Finally, Plaintiff did not display any mental impairments contributing to his inability to work—Plaintiff did not complain of cognitive difficulties, and mental status examinations showed Plaintiff had normal memory, attention, and concentration. Tr. 615, 624, 635.

For these reasons, substantial evidence supports the ALJ's decision to discount Dr. Ferguson's opinion. *Bayliss*, 427 F.3d at 1216.

### C. Agency Physicians

Plaintiff also claims the ALJ erred in giving great weight to the opinions of the State agency consultants. Plaintiff argues that because these opinions were provided before the onset date of disability of January 1, 2017, they did not have the benefit of the later treating neurologist opinions, the later evidence of seizures, and Plaintiff's subsequent unsuccessful attempts to work, and are therefore of little relevance. Pl.'s Op. Br. 12. The Commissioner replies that: (1) Plaintiff necessarily caused these opinions to fall outside the adjudicatory period by later amending the alleged onset date of disability; (2) Plaintiff has failed to show harmful error because the record shows an *improvement* in Plaintiff's seizure condition following the alleged onset date; and (3) an

ALJ "need only provide specific and legitimate reasons if he chooses to reject an opinion"—not if he chooses to give it significant weight. Def.'s Br. 7–8 (citing *Haase v. Berryhill*, CASE NO. C17-5194-MAT, 2017 WL 5009693, at *5 (W.D. Wash. Nov. 2, 2017) ("[A]n ALJ is not required to give reasons to give significant to an opinion; the ALJ must explain why an opinion is *rejected*." (emphasis in original) (citation omitted)).

The Court agrees. While Plaintiff urges the Court to come to a different conclusion than the ALJ, "the [C]ourt will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." *Tommasetti*, 533 F.3d at 1038. Because there is substantial evidence in the record, the ALJ did not err here.

## II. Plaintiff's Symptom Testimony

Plaintiff argues that the ALJ erred by rejecting Plaintiff's subjective symptom testimony. An ALJ may reject testimony about the severity of a claimant's symptoms only by offering "clear and convincing reasons" supported by "substantial evidence in the record." *Thomas*, 278 F.3d at 959. But the ALJ is not "required to believe every allegation of disabling pain, or else disability benefits would be available for the asking, a result plainly contrary to 42 U.S.C. § 423(d)(5)(A)." *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) (citation omitted). The ALJ may "consider a range of factors," including:

> (1) whether the claimant engages in daily activities inconsistent with the alleged symptoms; (2) whether the claimant takes medication or undergoes other treatment for the symptoms; (3) whether the claimant fails to follow, without adequate explanation, a prescribed course of treatment; and (4) whether the alleged symptoms are consistent with the medical evidence.

*Lingenfelter v. Astrue*, 504 F.3d 1028, 1040 (9th Cir. 2007); *see also Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014). The Court will uphold an ALJ's credibility finding even if all the ALJ's rationales for rejecting clamant testimony are not upheld. *Batson*, 359 F.3d at 1197.

Plaintiff testified that he has trouble sustaining employment due to stress, headaches, seizures, and confrontations with others at work. Tr. 135, 138–39. The ALJ found that Plaintiff's testimony conflicted with the record. Tr. 114, 116. The ALJ noted that Plaintiff's allegations went against physician reports that Plaintiff had good control of his seizures and Plaintiff's own reports that he was experiencing neither headaches nor side effects or complications from his medications. Tr. 114, 116.

Plaintiff argues that the ALJ failed to address Plaintiff's testimony of having trouble sustaining jobs because of his confrontations with others at work. Pl.'s Op. Br. 15 (citing tr. 154). But the Commissioner correctly notes that the ALJ need not "discuss every piece of evidence"; that "the ALJ accommodated any difficulties Plaintiff had in dealing with stress by limiting him to simple, routine work in a static environment with no public contact"; and that Plaintiff's testimony conflicted with the medical record. *Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003) (citation and internal quotation marks omitted); Def.'s Br. 11 (citing tr. 114, 434, 644, 646, 649).

The Court is bound to uphold an ALJ's findings if supported by reasonable inferences drawn from the record. *Batson*, 359 F.3d at 1193 (internal citations omitted). Here, it was reasonable for the ALJ to discredit Plaintiff's testimony because it was unsupported by medical evidence. While Plaintiff's interpretation is also rational, when faced with a "coin-flip" over an issue of factual interpretation, the Court is bound to defer to the ALJ. *Garrison v. Colvin*, 759 F.3d 995, 1010 (9th Cir. 2014).

///

///

///

**III. Lay Witness Statements**

Plaintiff argues that the ALJ erred by rejecting lay witness testimony from his former wife, former coworker, and father. Pl.'s Op. Br. 17–20. Generally, an ALJ must provide "germane reasons" for rejecting lay testimony. *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001).

Beginning with Plaintiff's former wife, she testified that Plaintiff's seizures made him confused and that he struggled with stress. Tr. 294–300. The ALJ discounted this testimony because it conflicted with Plaintiff's treatment records and the former wife's observations occurred before the adjudicatory period. Tr. 116–17. As the Commissioner correctly noted, an ALJ rejecting lay witness testimony because they did not observe a claimant during the period at issue is a germane reason to disregard testimony. *Turner*, 613 F.3d at 1224. And as already discussed, the medical record conflicts with testimony about Plaintiff's seizures, which is another germane reason for rejecting lay witness testimony. *Leon v. Berryhill*, 880 F.3d 1041, 1046 (9th Cir. 2018) (as amended).

Next, Plaintiff's former coworker testified that Plaintiff was fired because of his confrontational behavior. Tr. 349. But as the ALJ noted, Plaintiff's record suggested a pleasant demeanor. *See* tr. 434, 644, 646, 649. And Plaintiff's mental health records lack any mention of anger issues. *See* tr. 484, 486, 488, 490. The ALJ thus rejected this lay witness testimony because it was not supported by the medical evidence in the record. Tr. 116. The Court finds that the ALJ properly provided germane reasons while rejecting this lay witness testimony. *Leon*, 880 F.3d at 1046.

Finally, Plaintiff's father testified that his son's seizures posed several problems, including forgetfulness, anger, difficulty focusing, and mood swings. Tr. 350. The ALJ rejected this testimony by finding that there was no clear indication that the testimony pertained to the

adjudicatory period. Tr. 116. But this ignored the portion of the letter where Plaintiff's father revealed that Plaintiff was living with him, supporting Plaintiff's contention that his father's testimony did pertain to the period at issue. *See* tr. 350.

Yet this is ultimately harmless error because the father's lay witness testimony generally mirrors Plaintiff's subjective symptom testimony and other lay witness testimony. And as discussed, the ALJ properly rejected that testimony. It follows then that the ALJ's error in failing to provide a germane reason for rejecting the father's testimony is harmless because it does "not alter the ultimate nondisability determination." *Molina*, 674 F.3d at 1122.

## CONCLUSION

For these reasons, the Commissioner's final decision is AFFIRMED.[3]

IT IS SO ORDERED.

DATED this 8th day of March, 2021.

                                             _s/Michael J. McShane_____
                                             Michael J. McShane
                                             United States District Judge

---

[3] Plaintiff also argued that the Commissioner failed at Step Five to meet their burden. Pl.'s Op. Br. 20. Specifically, Plaintiff contended that the ALJ incorrectly assessed the record. *Id.* But as discussed above, the ALJ did not err in their assessment of the record, so it follows that the Commissioner met their burden in "identify[ing] specific jobs . . . [that exist] in substantial numbers in the national economy[.]" *Zavalin v. Colvin*, 778 F.3d 842, 845 (9th Cir. 2015) (internal quotation marks and citation omitted).